# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE PANERIO,<br><br>           Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Case No.  1:12-cv-00401-SAB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER DEVELOPMENT OF THE RECORD**<br><br>(ECF Nos. 12, 15, 16) |

## I.

## INTRODUCTION

Plaintiff Darlene Panerio ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disabled widow benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

For the reasons set forth below, Plaintiff's social security appeal shall be remanded on the issue of whether Plaintiff requires frequent breaks that would preclude work opportunities.

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (*See* ECF Nos. 2, 9.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff applied for disabled widow's benefits on February 27, 2008. (AR 50.) Plaintiff's application was initially denied on July 9, 2008, and denied upon reconsideration on September 11, 2008. (AR 50.) Plaintiff requested and received a hearing before Administrative Law Judge Stephen W. Webster ("the ALJ"), which took place on February 12, 2010. (AR 9-29.) On March 5, 2010, the ALJ found that Plaintiff was not disabled. (AR 58.) The Appeals Council declined Plaintiff's request for review on January 26, 2012. (AR 1.)

### A.     Plaintiff's Hearing Testimony

Plaintiff was born on December 7, 1957. (AR 13.) Plaintiff's husband passed away on November 27, 2003. (AR 13.) Plaintiff alleged a disability onset date of February 1, 2005, which is the date she was last employed. (AR 13, 17.) The date the wage earner was last insured was July 1, 2007. (AR 13.) Plaintiff suffers from bipolar disorder, depression, and problems with her left leg and right arm. (AR 17.) Plaintiff's depression manifests itself as the feeling that she does not have the energy to want to do anything. (AR 20.)

During the hearing, Plaintiff stated that her shoulder had been shaking for approximately two months and caused her whole body to shake. (AR 17, 21-22.) Plaintiff suffers from panic attacks a couple times a day when there are things to be done that she does not want to do. (AR 22.) Plaintiff has difficulty concentrating or paying attention and can only focus on a project for twenty to thirty minutes. (AR 22-23.) Plaintiff has to lay down to rest for one to one and one half hours every two hours during the day because she is tired from the shaking that keeps her awake at night. (AR 23.) Plaintiff sleeps for about two hours per night and then the shaking keeps her up for most of the night. (AR 24.) Three or four times per week Plaintiff spends most of the day in bed. (AR 23.)

Plaintiff is 5 foot 3 inches tall and weighs approximately 160 pounds. (AR 13.) Plaintiff is not married and has two adult children. (AR 13-14.) Plaintiff lives in a mobile home with a

---

[2] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). (See ECF No. 11.)

2

roommate. (AR 13, 24.) Plaintiff has a driver's license, but drives infrequently because of anxiety. (AR 14.) Plaintiff reports difficulty in personal grooming and needs help showering. (AR 14.) Plaintiff heats food in the microwave, does no yard work and very little housework. (AR 15.) Plaintiff does about two loads of laundry a week and watches television for five to six hours per day. (AR 15.) Plaintiff does not read or spend time on the computer, and while she used to have hobbies, she reports that she no longer does. (AR 16.) Plaintiff is able to attend church, but does not attend movies. (AR 16.) Plaintiff does not receive a pension, welfare, or food stamps. (AR 17.)

Plaintiff has a high school diploma, but has not received any additional schooling or training. (AR 16.) Plaintiff worked full-time as a sales person in a pet supply business. (AR 21.) At the hearing, Plaintiff states that she has never had a problem with the use of illegal drugs or alcohol. (AR 21.) Although Plaintiff keeps to herself, she gets along well with people. (AR 24.) Plaintiff does not like being out in public. (AR 24.) Plaintiff does not have a problem with being on task or having someone tell her what to do. (AR 24.)

Plaintiff is treated by Dr. Durazo, who she sees every three months, and also attends therapy. (AR 18.) Dr. Durazo has prescribed Xanax and Depakote for Plaintiff's bipolar disorder. (AR 18.) At the time of the hearing, Plaintiff was taking Xanax, which was prescribed by Dr. Durazo, and Depakote, Prozac, and Abilify, which were prescribed by Tulare[3] County Mental Health. (AR 18.) Plaintiff sees Tulare County Mental Health every three weeks. (AR 18.) Plaintiff uses heat to relieve her arm and leg problems, but takes no medication. (AR 18-19.) Plaintiff is able to sit or stand for twenty to thirty minutes at a time. (AR 19.) Plaintiff is able to walk for five minutes. (AR 19.) Plaintiff does not lift her grandson who weighs nineteen pounds because she is afraid she will drop him. (AR 19.)

### B. Vocational Expert's Hearing Testimony

Jose Chavez, a vocational expert ("VE"), also testified at the hearing. (AR 25-28.) The VE testified that Plaintiff does have transferrable skills to other light jobs. (AR 25.) The VE was

---

[3] Incorrectly identified in the hearing transcript as Julera County Mental Health.

asked to opine about the job prospects of an individual with several hypothetical limitations. First the VE was asked a hypothetical with the following limitations:

    A person of claimant's age, education, and work history;

    Able to lift 50 pounds on occasion and 25 pounds frequently;

    Able to sit, stand and/or walk for six out of eight hours;

    Able to frequently stoop, crouch, kneel, or crawl; and

    Could occasionally climb.

(AR 25). The VE opined that this person could do any of Plaintiff's past relevant work as actually performed by her or generally performed in the national economy. (AR 25.)

    The VE was presented with a second hypothetical with the following limitations:

    A person of claimant's age, education, and work history;

    Able to lift 20 pounds on occasion and 10 pounds frequently;

    Able to sit, stand and/or walk for six out of eight hours;

    Able to occasionally stoop, crouch, kneel, or crawl;

    Able to have occasional contact with the public.

(AR 26.) The VE opined that this person could not do any of Plaintiff's past relevant work, however there are jobs in the regional or national economy that this individual could perform, such as housecleaning/housekeeper (DOT code is 323.687-014, nationally there are approximately 245,000 jobs, in California there are between 25,000 to 26,000 jobs). (AR 26.) This person could also work as a ham rolling machine operator (DOT code is 529.685-138, nationally there are around 21,000 jobs, and in California there are about 2,700 jobs). (AR 26.) There is also a linking machine operator (DOT code is 529.685-162, nationally there are 21,000 jobs, and 2,700 in California). (AR 26-27.)

    Finally, the VE was asked to assume the second hypothetical, but additionally the individual had occasional problems maintaining attention, concentration, and pace. (AR. 27.) The VE opined that there would be no jobs in the regional or national economy that this person could perform. (AR 27.)

    Plaintiff's attorney asked the VE to assume the second hypothetical with the additional

criteria that the individual would require frequent breaks. (AR 27.) The VE stated that it was unclear what frequent breaks would mean. (AR 27-28.) However, he opined that, assuming frequent breaks would mean the individual would be off work for periods of time throughout the day, that would preclude all work. (AR 28.)

### C. Medical Record

The entire medical record was reviewed by the Court. (AR 170-244.) The medical evidence will be referenced below as necessary to this Court's decision.

### D. ALJ Findings

The wage earner died on January 27, 2003.[4] (AR. 50.) In order to be eligible for disabled widow benefits, Claimant must establish that her disability began on or before January 31, 2010. (AR 50.) Using the Social Security Administration's five-step sequential evaluation process, the ALJ concluded that Plaintiff was not under a disability within the Social Security Act from February 1, 2005 through January 31, 2010. (AR 50-58.) The ALJ made the following findings of fact and conclusions of law:

> 1. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. (AR 52.)
>
> 2. The prescribed period ended on January 31, 2010. (AR 52.)
>
> 3. The claimant has not engaged in substantial gainful activity since February 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq*.). (AR 52.)
>
> 4. The claimant has the following severe impairments: left leg pain, obesity, and depression (20 CFR 404.1520(c)). (AR 52.)
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 53.)
>
> 6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours each in an 8 hour day; and can occasionally stoop, crouch, kneel, or crawl. She can have occasional contact with the public (20 CFR 404.1567(b)). (AR 54.)
>
> 7. Claimant is unable to perform any past relevant work (20 CFR 404.1565).

---

[4] The Court notes that the hearing testimony states that Plaintiff's husband died on November 27, 2003.

(AR 56.)

8. The claimant was born on December 7, 1957 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563). (AR 56.)

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). (AR 56.)

10. Transferability of job skill is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568). (AR 56.)

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). (AR 56.)

12. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2005 through the date of this decision (20 CFR 404.1520(g)). (AR 57.)

## III.

## LEGAL STANDARDS

### A. Disabled Widow Benefits

When a person who is fully insured dies, the surviving spouse may qualify for Widow/Widower Benefits. 20 C.F.R. § 404.335. As relevant here, a surviving spouse qualifies for disabled widow's benefits if she can prove that she is the widow of a deceased worker who previously qualified for Social Security Benefits; she is at least 50 years old; she has not re-married; and she has a disability that began before the end of the statutorily prescribed period. 20 C.F.R. § 404.335(c). "The prescribed period ends the month prior to the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death, or 7 years after the widow was last entitled to survivor's benefits, whichever is later." Carter v. Astrue, No. 3:11-cv-1438-MMA (KSC), 2013 WL 754780, at *4 (S.D.Cal. Feb. 8, 2013) (citing 20 C.F.R. § 404.335(c)(1)).

### B. Evaluating Social Security Disability Claims

To qualify for disability insurance benefits, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

6

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

### C. Substantial Evidence

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)). "[A] reviewing court must consider the

entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. *See* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred in failing to adopt Dr. Fabella's findings, failing to find Plaintiff unable to work due to mental disability; and failing to find the claimant credible. "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

### A.     Whether Plaintiff Requires Frequent Breaks

Plaintiff claims that the ALJ erred by failing to adopt all the limitations found by Dr. Fabella and not giving reasons for the failure to do so. Specifically, the ALJ did not address Plaintiff's contention that she was required to take frequent breaks.

Defendant contends that the ALJ gave Dr. Fabella's opinion substantial weight, but noted that Plaintiff received treatment for her left leg pain that was consistent with her ability to perform light work. At the hearing, Plaintiff testified that she did not take pain medication for her leg pain, but treated it with heat. Defendant argues that the ALJ permissibly relied on this information to determine that Plaintiff was capable of sitting, standing, and walking for a total of 6 hours in an 8 hour day and did not require frequent breaks. Further, the ALJ relied upon minimal objective clinical findings that Plaintiff was capable of a limited range of light work to reject Dr. Fabella's frequent break limitation. Finally, Defendant argues the ALJ considered the opinions of the non-examining medical consultants who found no functional limitations.

Plaintiff replies that the ALJ erred by not giving any reasons for rejecting the frequent break limitation by Dr. Fabella, and this action should be remanded for further hearings or the claimant should be paid outright.

The ALJ found that Plaintiff's left leg pain, obesity, and depression "cause more than minimal limitation upon basic work activity." (AR 52.) In assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours each in an 8 hour day; and can occasionally stoop, crouch, kneel, or crawl. (AR 54.) The ALJ considered the medical record and found that Plaintiff received limited treatment for her left leg pain and this is consistent with the ability to perform light work. (AR 55.)

In coming to this decision, the ALJ took into account the opinion of Dr. Fabella, who was a consulting doctor. The ALJ found that Dr. Fabella "concluded that the claimant is able to lift and carry 50 pounds occasionally and 25 pounds frequently and stand or walk 6 hours in an 8 hour day and sit without limitation with frequent breaks. She can climb, balance, kneel, and crawl frequently; and walk on uneven terrain, climb ladders, or work at heights occasionally." (AR 55.) The opinion was given substantial weight however, the ALJ found that based on the evidence presented at the hearing, Plaintiff cannot lift more than 20 pounds occasionally. (AR 55.) In addressing Plaintiff's credibility, the ALJ found that the medical findings are minimal and consistent with the ability to perform light work. (AR 56.) Based on this, the ALJ determined that the residual functioning capacity assessment was supported by the record, opinion evidence, and overall evidence of record. (AR 56.)

In this instance, the ALJ did not include any discussion of Plaintiff's assertions that she required frequent breaks or address the finding of Dr. Fabella that frequent breaks would be required. Defendant argues that the ALJ rejected the finding based upon the minimal objective clinical findings made by Dr. Fabella. However, the ALJ did not set forth any reason, such as the opinion is brief, conclusory, and inadequately supported by clinical findings, to reject Dr. Fabella's assessment that frequent breaks would be required. Thomas, 278 F.3d at 957.

Defendant argues that the ALJ considered the opinions of the non-examining medical consultants who found no functional limitations in determining that frequent breaks would not be required. Additionally, Defendant contends the ALJ considered Plaintiff's testimony regarding her medical condition during the hearing. However, the ALJ did not include any discussion

9

regarding conflicting evidence on whether Plaintiff would require frequent breaks. The ALJ merely omitted the need for frequent breaks without discussion.

The VE testified that if Plaintiff were to require frequent breaks, as he understood the term, that would preclude all work. The ALJ's failure to address this issue was error and the findings are not supported by substantial evidence. The Court has the discretion to remand a case for either an award of benefits or for additional evidence. Smolen, 80 F.3d at 1292. The remand should be for "an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id.

Here, Dr. Fabella's assessment that frequent breaks would be needed has not been sufficiently developed in the record before the Court. Dr. Fabella found that Plaintiff would require frequent breaks from sitting, standing, or walking. While the issue of breaks was addressed during the hearing, Plaintiff stated that she needed breaks because she was tired due to the shaking that kept her up at night. Plaintiff testified that, every two hours during the day, she would rest for one hour to one and one half hours. The ALJ did find that there was no evidence in the record to suggest the shaking which caused the lack of sleep has lasted or is expected to last for 12 months. (AR 52.) When the VE was asked the hypothetical regarding the frequent break requirement, he stated it was unclear what was meant by the term "frequent breaks." The VE assumed that frequent breaks would mean the individual would be off work for periods of time throughout the day. However, Dr. Fabella's report does not support this assumption that Plaintiff would be required to be off work throughout the day. The ALJ did not clarify this issue with the VE to determine if work would be available if Plaintiff needed to have frequent breaks from sitting, standing, or walking or provide any reasons for discounting this finding by Dr. Fabella.

This action shall be remanded for the ALJ to further develop the record as to whether Plaintiff would require frequent breaks which would preclude all work opportunities and entitle her to benefits.

///

10

**B.     Whether Plaintiff is Unable to Work Due to a Mental Disability**

Plaintiff asserts that the ALJ erred by failing to discuss how the GAF scores indicating serious limitations assessed by Tulare County Mental Health, Dr. Whisenhunt, and on the DSM-IV due to depression would preclude work.  Defendant states that while Plaintiff appears to be arguing that this evidence was ignored, the ALJ is not required to discuss every piece of evidence.  Defendant argues that Plaintiff has not identified any work related limitations inconsistent with the ALJ's finding that Plaintiff could perform work involving occasional contact with the public.  Defendant points out that Dr. Whisenhunt informed Plaintiff that he would not complete a form for her attorney, and advised her to find an activity such as taking a class or volunteer work.  Defendant contends that because the diagnoses were not inconsistent with ALJ's RFC there was no need to reject the evidence and Plaintiff's GAF scores are not inconsistent with the ALJ's finding that she would be able to perform work involving only occasional contact with the public.

In addressing Plaintiff's mental issues, the ALJ found that Plaintiff has mild restrictions in activities of daily living and can care for her personal needs.  She is able to warm food in the microwave, does two loads of laundry a week, cleans up around the house a little, visits her sister, drives, and is able to attend church.  (AR 53.)  Plaintiff has moderate difficulty with social functioning.  She has difficulty being in public and her symptoms of depression and anxiety are made worse with more than occasional public contact.  (AR 53.)  Plaintiff has mild difficulties with concentration, persistence or pace.  (AR 53.)  Dr. McDonald, consultative psychologist concluded that Plaintiff is able to understand instructions and respond on time.  (AR 53.)  Plaintiff has not experienced any episodes of decompensation of extended duration.  (AR 53.)  Based upon this analysis, the ALJ found that Plaintiff did not satisfy the criteria under paragraph B which would require at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation of extended duration.  (AR 53.)  Further, there was no evidence of paragraph C criteria.  (AR 53.)

The ALJ found that the records of Plaintiff's mental health treatment were internally

11

inconsistent. (AR 55.) Plaintiff claims that the ALJ did not discuss the GAF[5] scores that indicate serious impairment due to depression preclude work. The ALJ is not required to give controlling weight to the treating physician's GAF score and failing to mention the GAF score would not render the ALJ's assessment deficient. Green v. Astrue, No. 5:10-cv-01294-AJW, 2011 WL 2785741, at *3 (C.D.Cal. July 15, 2011); see Williams v. Astrue, No. 5:08-cv-01378 JC, 2010 WL 147957, at *6 (C.D.Cal. January 11, 2010) ("GAF scale does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorder listing.") (quoting 56 Fed.Reg. 50746, 50764-65 (August 21, 2000)).

In this instance, the ALJ did consider the GAF scores. In his report, the ALJ discusses that in December 2008, Plaintiff was assigned a GAF of 40 by clinician McWalter, however, the treatment records for the 2009 year show that Plaintiff received infrequent routine medication checks less often than once per month, with few problems noted and Plaintiff was doing well on her medication. (AR 55.) The ALJ found that the treating records are not consistent with severe symptoms. (AR 55.)

A review of the medical records during the time period that the GAF scores were assessed shows that the ALJ's determination that Plaintiff was receiving minimal treatment and her depression was stable, is supported by substantial evidence in the record. Plaintiff was seen Dr. Durazo on March 10, 2008. Plaintiff did not appear in any neurologic deficit and was somewhat anxious, but alert. Her medications were adjusted and Dr. Durazo recommended an MRI of her brain when she was stable and considering adding an additional medication when she had mood swings. (AR 170.)

Dr. McDonald evaluated Plaintiff on May 6, 2008. (AR 180.) The only mental health history reported at this time was treatment by Dr. Durazo. (AR 181.) Dr. McDonald stated that Plaintiff had not sought psychotherapy to address either her panic or depression which appear to

---

[5] "The GAF score is a 'multiaxial' assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning. . . . A score of 40 signifies '[s]ome impairment in reality testing or communication' or 'major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. . . . .'" Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D.Cal. July 15, 2011) (quoting American Psychiatric Association, Diagnositic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)).

be non-significant issues. (AR 183.) Dr. McDonald found that Plaintiff's depression appeared to be related to her medical issues, Plaintiff was assessed a GAF score of 65, and the granting of disability would be depend upon the diagnosis of her physical disabilities. (AR 184.) Three days later, on May 9, 2008, Clinician McWalter assessed Plaintiff a GAF score of 40. (AR 228-233.)

On June 11, 2008, Plaintiff was seen by Dr. Durazo for pain. She was alert and oriented and not acutely distressed. (AR 215.) Dr. Ikawa's analysis was prepared on June 16, 2008. (AR 207.) Dr. Ikawa found that Plaintiff's degree of limitation was mild and she had no repeated episodes of decompensation of extended duration. (AR 204.) Dr. Ikawa determined that there were inconsistencies between the medical reports. The medical opinions were partially or completely unsupported by objective findings of fact and/or the preponderance of the evidence and it was obvious that the doctor leaned heavily on Plaintiff's subjective statements. (AR 208.)

On November 6, 2008, Plaintiff was seen by Dr. Whisenhunt. Plaintiff's insight was very poor, judgment was fair to poor, and impulse control was fair. Plaintiff was found to have bipolar affective disorder, mixed, moderate without psychosis. Dr. Whisenhunt assigned Plaintiff a GAF score of 44-48. (AR 25-28.) On this same date Clinical McWalter assigned Plaintiff a GAF score of 40. (AR 223.) (AR 227.) On December 23, 2008, Plaintiff saw Dr. Durazo for a medication refill. She reported that she was being seen by the Mental Health Department. Plaintiff was alert and in no acute distress. (AR 219.)

On March 17, 2009, Plaintiff was seen by Dr. Whisenhunt. Plaintiff's mood was variable, affect anxious. Her thoughts were fairly well organized. Speech was clear and coherent, with mild paranoid ideation. Plaintiff insight and impulse control were fair, and judgment was fair to good. Plaintiff had some increased anxiety, but was stable. (AR 220.) On March 23, 2009, Plaintiff had a follow-up appointment with Dr. Durazo. She reported that she was receiving treatment from County Mental Health. She was not acutely distressed, appeared alert and oriented. Plaintiff's affect, though somewhat animated at times, was otherwise appropriate. Plaintiff's bipolar depression was fairly stable. (AR 217.)

On April 23, 2009, Plaintiff was seen by Dr. Whisenhunt. Plaintiff's mood was mostly stable, but slightly depressed. Affect was appropriate. Thoughts were well organized. Insight,

judgment and impulse control were fair to good. Plaintiff was experiencing some anxiety and depression, but was essentially stable. (AR 221.)

Plaintiff saw Dr. Whisenhunt again on May 28, 2009. During the visit, Plaintiff was tearful over her father's poor health because he had a stroke the weekend prior to her appointment. Her mood was variable and her thoughts were well organized. Plaintiff's insight was fair. Her judgment and impulse control were fair to good. Dr. Whisenhunt found Plaintiff was stable. (AR 220.)

On September 23, 2009, Plaintiff was seen for a follow-up by Dr. Durazo. She reported that she was seeing a psychiatrist monthly. Her affect was appropriate and her bipolar depression was stable. (AR 241.) On November 13, 2009, Plaintiff saw Dr. Whisenhunt and reported she was worrying about the form her lawyer gave her for Dr. Whisenhunt to complete. Plaintiff's mood was dysthymic, affect slightly anxious. Her speech was clear and coherent with well organized thoughts. Insight, judgment, and impulse control were fair to good. Plaintiff's depression was stable. (AR 237.)

On December 4, 2009, Plaintiff was seen by Clinician McWalter. McWalter stated that Plaintiff was content with her life. She chooses not to use the information and tools provided. She has no desire to achieve and prefers to do nothing. Plaintiff's symptoms were in remission on medication, and Plaintiff was stable. (AR 234.) On December 29, 2009, Plaintiff was seen by Dr. Durazo and reported that she was doing fairly well and was in good spirits. (AR 240.)

While Plaintiff argues that the ALJ ignored the GAF scores, those scores were considered by the ALJ, however he found that the treatment records for the time period relevant to those scores was consistent with mild symptoms. (AR 55.) A review of the treatment records demonstrates that this decision is supported by substantial evidence. The medical records at the time that the GAF scores were assessed and for the year after this assessment, show that Plaintiff's mental health condition was found to be stable. Further, none of the records contradict the finding of the ALJ that Plaintiff was able to work with some public contact. In this instance, the Court finds that the decision of the ALJ is supported by substantial evidence and remand or reversal on this basis is not warranted.

**C.      Whether ALJ Erred in Finding Plaintiff Not Credible**

Finally, Plaintiff argues that the ALJ erred in failing to find Plaintiff credible because there was no evidence that Plaintiff was malingering and the medical evidence supports Plaintiff's symptoms. Defendant contends that the ALJ permissibly relied on Plaintiff's poor work history, her inconsistent statements, and the fact that Plaintiff's claims were inconsistent with the medical and mental health providers' findings to find Plaintiff was not credible.

Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (internal punctuation and citation omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior

inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found that Plaintiff had presented objective medical evidence that could reasonably be expected to result in pain or other symptoms. Since there is no evidence of malingering in the record, the ALJ must present clear and convincing reasons for the adverse credibility finding. Carmickle, 533 F.3d at 1160. The ALJ stated several permissible reasons for discrediting the testimony of Plaintiff.

The ALJ found that claimant's medical records show recent marijuana abuse and a history of alcohol abuse, however Plaintiff denied using illicit drugs to Dr. McDonald and denied alcohol abuse. During the hearing, Plaintiff testified that she had never had a problem with the use of illegal drugs or alcohol. (AR 21.) On May 6, 2008, Dr. McDonald reported that Plaintiff denied the use of illicit drugs, but reported that she has significant problems with alcohol, although she no longer drinks. (AR 182.) During her appointment with Dr. Whisenhut on November 6, 2008, Plaintiff stated that she has used marijuana and cocaine in the past. She no longer uses cocaine, but smokes marijuana occasionally with friends. She used to be an alcoholic, but has not drank in three years. (AR 225.) The ALJ's finding that Plaintiff gave conflicting statements regarding her use of alcohol and illegal drugs is clearly supported in the record. The ALJ did not err in considering this information to determine whether Plaintiff was credible.

In evaluating Plaintiff's residual functional capacity the ALJ found that Plaintiff was credible to the extent that her symptoms were consistent with the residual functional capacity assessment. The record shows that Plaintiff had received limited treatment for her leg pain, obesity, and depression. (AR 55.) During the hearing, Plaintiff testified that she did not take any medication for pain, and treated her symptoms with heat. (AR 18-19.) Plaintiff advised Dr. Durazo that even if surgery were available for her back pain she would not undergo surgery, but preferred other options. (AR 173.) As discussed above, the ALJ found that Plaintiff's depression was stable and not disabling. The ALJ appropriately considered the treatment Plaintiff was

1  receiving and her response to the conservative treatment plan in determining whether Plaintiff
2  was credible in reporting her symptoms. Tommaseti, 533 F.3d at 1039-40.

3  The ALJ also found Plaintiff was not fully credible based upon her poor work history.
4  (AR 56.)  A review of Plaintiff's summary of earnings reveals that from 1987 through 2002,
5  Plaintiff only earned income in 1987, 1988, 1990, 1991, 1992, 1999, 2000, 2001, and 2002.
6  Further, for the years that Plaintiff did earn income the most she earned was $2,215.01 in 1990;
7  and $4,574.64 in 1991.  Plaintiff's most recent earnings were $247.50 in 1999; $112.50 in 2000;
8  $1,080.00 in 2001, and $275.00 in 2002.  (AR 105.)  Further, while Plaintiff claims to have been
9  working fulltime prior to February 2005, the social security records show no income from 2003
10 through 2009.  (AR 108, 125.)  The ALJ's finding that Plaintiff had a poor work history is clearly
11 supported in the record. Thomas, 278 F.3d at 958 (ALJ found extremely poor work history with
12 little propensity to work in lifetime negatively affected claimant's credibility regarding her ability
13 to work).

14 The reasons for discounting Plaintiff's credibility are supported by substantial evidence in
15 the record and the ALJ did not err by finding Plaintiff's testimony not credible.  A remand or
16 reversal on this basis is not warranted.

17 **V.**

18 **CONCLUSION AND ORDER**

19 Based on the foregoing, the Court finds that ALJ erred in failing to address the issue of
20 whether Plaintiff requires frequent breaks that would preclude all work.  This issue is
21 insufficiently developed in the record and for that reason, this action will be remanded for the
22 ALJ to either further develop the record as to whether Plaintiff would require frequent breaks
23 which would preclude all work opportunities and entitle her to benefits.

24 The ALJ did not err in determining whether Plaintiff's mental disability and the GAF
25 scores would preclude her from working.  The decision that Plaintiff's mental disability did not
26 preclude her from work which required occasional contact with the public was based on the
27 proper legal standards and is supported by substantial evidence.

28 Finally, the ALJ did not err in his assessment of Plaintiff's credibility.  The ALJ's

1  determination was based on the proper legal standards and is supported by substantial evidence.
2  Accordingly,
3      IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner
4  of Social Security is GRANTED.  The Court REMANDS this action back to the Commissioner
5  for further administrative proceedings consistent with this opinion.
6      IT IS FURTHER ORDERED that judgment be entered in favor of Plaintiff Darlene
7  Panerio and against Defendant Commissioner of Social Security.  The Clerk of the Court is
8  directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **April 19, 2013**

UNITED STATES MAGISTRATE JUDGE